UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

　　　　　　Plaintiff,

　　　　v.

ROBERT XAN PAUL,

　　　　　　Defendant.

Case No. 14-cr-00164-RS-1

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Robert Xan Paul was indicted in March of 2014 on one count of conspiracy to file a false tax claim in violation of 18 U.S.C. § 286. *See* Dkt. 1. The indictment alleges Paul's three co-conspirators, Duffy "Kevin" Dashner, Mark R. Maness, and Henri E. Norris, operated a business named O.I.D. Process, which promoted and provided services to clients in the filing of fraudulent Original Issue Discount ("OID") interest income and federal tax withholding documents with their federal income tax returns. *See id*.

The indictment alleges that in April of 2010, Paul filed a Form 1040 tax return for tax year 2009, falsely reporting federal income tax withholdings based on fraudulent Forms 1099-OID, and claiming a refund of nearly $600,000, to which he knew he was not entitled. In May of 2010, the IRS issued a "refund" check to Paul in the amount of $595,110. Paul allegedly paid 20 percent of the refund to Dashner and Maness, and thereafter wired $400,000 to his wife in Brazil.

Paul left for Brazil three days later, and apart from a brief return trip in December of that

year, remained in Brazil until his arrest and extradition in 2023. Paul argues he cannot be characterized as having fled, because, (1) there is no evidence he was aware he had been indicted, (2) he had traveled to Brazil repeatedly prior to the indictment because his wife was a Brazilian national, and he moved there permanently to be with her and her family, (3) he thereafter lived openly at the same address, under his own name, operating a yoga business that would appear in Google searches, and (4) he interacted openly with the Brazilian government, maintaining a national identity card under his name and address.

Paul now moves to dismiss the indictment, arguing the eight-and-a-half-years that elapsed between his indictment and his arrest violated his constitutional right to a speedy trial. Because the government took legally adequate measures to pursue Paul, and because he has not shown actual prejudice, the motion to dismiss will be denied.

## II. FACTUAL BACKGROUND

As noted above, Paul's indictment arises from a tax return he filed in April of 2010. Paul's motion attempts to paint a picture of an overall lackadaisical pursuit by the government of its case against him. For example, Paul insists that the government had in its possession virtually all of the information used to indict him when his alleged co-conspirators were indicted in 2012. Paul also asserts there is an "unexplained gap" between the apparent conclusion of the government's investigation into him in July 2013 and his indictment in March of 2014. Paul similarly complains of a lack of alacrity in various steps the government took after the indictment, such the approximately six months that elapsed before it issued a Red Notice for Paul through the INTERPOL database, and the delay until October of 2017 before the indictment was unsealed.

The legal basis of Paul's motion, however, is limited to a claim that "[t]he eight-and-a-half-year delay between indictment and arrest was presumptively prejudicial and caused by the Government's negligence in pursuing Mr. Paul," and that even if a presumption of prejudice is not warranted, he has established actual prejudice and is entitled to dismissal. The motion therefore turns primarily on the sufficiency of the efforts the government made to secure Paul's arrest

following the indictment.[1] Those facts are not substantially disputed:

-- The government entered Paul's arrest warrant into the NCIC database within weeks of his indictment.

-- The government requested that INTERPOL issue a formal Red Notice for Paul less than two months after he was indicted.

-- After an exchange of correspondence to resolve certain issues raised by INTERPOL, a formal Red Notice was issued, published to INTERPOL's database, and disseminated to all INTERPOL member countries – including Brazil – in September of 2014.

-- The government provided detailed information about Paul and his location to Brazilian authorities through the Red Notice, including his photograph, fingerprints, physical description, and passport and driver's license numbers, as well as notes indicating that he "may be living in Ilhabela, Sao Paulo Brazil, with his wife, Marina Nogueira Paul, and two children," and that he was likely in the yoga and/or massage business. Although Paul faults the government for not providing *additional* information it had about his possible address or means to locate him, he does not dispute this information was given to the Brazilian authorities.

-- The government ran an Accurint database report on Paul in October of 2017.

-- The government moved to unseal the indictment in October of 2017.

-- The government conducted an investigation in November and December 2018, that included several witness interviews, a public records search, and drive-by of a North Carolina property associated with Paul, in an effort to determine if he perhaps could be located in this country.

-- The government revalidated the Red Notice in March of 2019.

---

[1] Paul does argue that pre-indictment delay is a "relevant circumstance" that should be taken into account when evaluating the issue of prejudice.

CASE No.  14-cr-00164-RS-1

1    -- The government confirmed to INTERPOL in April of 2022 that the arrest warrant

2    remained valid.

3    -- The government engaged in a flurry of communications with INTERPOL in the weeks

4    before Paul's arrest in September of 2022 to confirm he was still wanted and that an

5    extradition request would be made.

6

7                              III.  DISCUSSION

8        The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

9    enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. The parties agree that the

10   framework for resolving this motion is the four-factor balancing test set out in *Barker v. Wingo*,

11   407 U.S. 514 (1972). Those factors are: (1) the length of the delay; (2) the reason for the delay; (3)

12   the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant from the

13   delay. *Id.* at 530; see also *Doggett v. United States*, 505 U.S. 647, 651 (1992) (discussing *Barker*

14   factors). "None of these four factors are either necessary or sufficient, individually, to support a

15   finding that a defendant's speedy trial right has been violated." *United States v. Mendoza*, 530

16   F.3d 758, 762 (9th Cir. 2008). Rather, "the factors are related" and must be considered with other

17   "relevant circumstances," including the "full recognition that the accused's interest in a speedy

18   trial is specifically affirmed in the Constitution." *Id* (quoting *Barker*, 407 U.S. at 533) (internal

19   quotations omitted).

20

21       *Length of delay*

22       The length of the delay is a "threshold" factor. *United States v. Alexander*, 817 F.3d 1178,

23   1181 (9th Cir. 2016). A sufficiently lengthy delay "necessitates an examination of the other three

24   factors." *Id.* (quoting *United States v. Sears, Roebuck & Co., Inc.*, 877 F.2d 734, 739 (9th Cir.

25   1989). Here, there is no dispute that the elapsed period of more than eight years is sufficiently

26   lengthy to trigger an inquiry into the other factors. *See United States v. Gregory*, 322 F.3d 1157,

27   1161–62 (9th Cir. 2003) ("[D]elays approaching one year are presumptively prejudicial.").

28

United States District Court
Northern District of California

As the government stresses, however, this does not mean that prejudice is presumed for purposes of the fourth *Barker* factor – the existence of prejudice. *See United States v. Cabral*, 979 F.3d 150, 157 (2nd Cir. 2020) ("[T]he notion of a delay that is 'presumptively prejudicial' (i.e. long enough to trigger a Sixth Amendment inquiry) should not be confused with a delay that is so long as to cause 'presumptive prejudice' (*i.e.* prejudice that need not be specifically shown) under the fourth *Barker* factor.") (internal citations and quotations omitted).

*Reason for delay*

The second factor, the reason for delay, is "the focal inquiry." *Alexander,* 817 F.3d at 1182 (citing *United States v. Sears, Roebuck & Co*., 877 F.2d 734, 739 (9th Cir. 1989). "If the government can show that the delay was wholly justifiable because it proceeded with reasonable diligence, the defendant's speedy trial claim generally cannot succeed in the absence of a showing of actual prejudice resulting from the delay." *Alexander,* 817 F.3d at 1182; *see also Doggett*, 505 U.S. at 656. Conversely, prejudice may be presumed if "the government intentionally delayed or negligently pursued the proceedings." *Alexander,* 817 F.3d at 1182.

There is no contention here that the government engaged in intentional delay or acted in bad faith. The question is only whether it was negligent. Although Paul emphasizes additional steps he believes the government *could* have taken to prod or assist the Brazilin authorities, or efforts it could have made to contact him directly to inform him of the indictment, the record shows that on the whole the government pursued Paul's arrest and extradition with reasonable diligence.

Paul repeatedly insists this case is not meaningfully distinguishable from, and therefore governed by, the Ninth Circuit's decision in *Mendoza.* Paul Mendoza, the defendant in *Mendoza*, was convicted on two counts of subscribing to a false income tax return in violation of 26 U.S.C. § 7201. Mendoza had embezzled nearly $300,000 from a medical clinic, and had not reported his ill-gotten gains as income. During the IRS investigation, Mendoza left the U.S. and went to the Philippines. After obtaining a phone number for relatives of Mendoza in the Philippines, an IRS

1   agent left a message for him. Mendoza returned the agent's call from the Philippines and indicated

2   he intended to return to the U.S. soon. The agent did not inform Mendoza of a grand jury

3   subpoena the agent wanted to serve on him.

4           A few months later, Mendoza was indicted. According to the *Mendoza* opinion:

                After the indictment, the government put a warrant out on the law
5               enforcement database so that Mendoza would be detained when he
6               attempted to return to the United States. The warrant was the only
                attempt the government made to apprehend Mendoza; the
7               government made no attempt to contact Mendoza to inform him that
8               he had been indicted.

9   530 F.3d at 762.

10          Mendoza eventually returned the U.S. several years later. For reasons that were not clear in

11  the record, Mendoza was not detained upon re-entry despite the entry in "the law enforcement

12  database," but he was arrested within four months thereafter. *Id.* The *Mendoza* court ultimately

13  held that the delay between indictment and arrest was a result of the government's negligence. *Id.*

14  at 765. Because prejudice must be presumed where the government's negligence has caused

15  excessive delay, dismissal of the indictment was warranted. *Id.*

16          To be sure, there are some similarities between this case and *Mendoza.* Both defendants

17  were charged with filing false tax returns. In both instances, the government knew the defendants

18  had left the country by the time they were indicted. In neither case did the government use all the

19  possible contact information at its disposal to attempt to notify the defendant that an indictment

20  had issued. In both cases, the time period between indictment and arrest was around eight years.

21          Where Paul's reliance on *Mendoza* fails, however, is in his repeated insistence that

22  government's issuance of a Red Notice here was equivalent to the action of the government in

23  *Mendoza,* where it merely "put a warrant out on the law enforcement database." The critical

24  distinction is that the Red Notice was a request to the Brazilian authorities that they undertake an

25  effort to locate and arrest Paul *in Brazil*, where U.S. authorities lack jurisdiction to act. The

26  database entry in *Mendoza*, in contrast, was merely intended to ensure the U.S. authorities would

27  arrest Mendoza *in the U.S.*, when and if he ever returned on his own. The government made no

28

United States District Court
Northern District of California

1    effort to enlist Philippine authorities in any effort to arrest Mendoza in the Philippines (apparently

2    because the government "believed that there was no extradition treaty that would permit the IRS to

3    bring Mendoza to trial for tax offenses against his will." 530 F.3d at 766 (Bybee, J, concurring)).

4         In the absence of any effort to have Mendoza arrested in the country where the government

5    believed him to be, it was incumbent on the government to make efforts to notify him of the

6    indictment "or else risk that Mendoza would remain abroad while the constitutional speedy-trial

7    clock ticked." *Id.* at 763. In the present case, the government believed (correctly, as it turned out)

8    that Brazilian authorities would arrest Paul and would honor a request to extradite him. It was

9    therefore not negligent for the government not to undertake additional efforts to ensure Paul was

10   aware of the indictment. The only consequence of the government's election not to attempt to

11   inform Paul of the indictment is that it cannot show Paul in fact knew of the indictment at any time

12   prior to his arrest—were it otherwise, "*Barker's* third factor, concerning invocation of the right to

13   a speedy trial, would be weighed heavily against him." *Doggett* 505 U.S. at 653.[2]

14        Furthermore, the government was not obligated to take additional steps to ensure the

15   Brazilian authorities took prompt and effective action. "There is no requirement that law

16   enforcement officials make heroic efforts to apprehend a defendant who is purposefully avoiding

17   apprehension." *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993) (internal quotation

18   marks omitted). Even here, where the government has not shown that Paul was "purposefully

19   avoiding apprehension," it cannot be deemed negligent for relying on international comity and the

20   Red Notice process. As Paul's own arguments demonstrate, it would not have been difficult to

21   locate him at almost any time during the eight years. That the Brazilian authorities did not do so

22   cannot be characterized as negligence on the part of the U.S. government, which is not in a

23

24   [2] The government characterizes Paul's assertion that he was unaware of the indictment at any time
     prior to his arrest as "incredible." The circumstantial evidence to which the government points,
25   however, at most shows Paul must have known that he had been investigated, not necessarily that
     any indictment had been issued. Even to the extent an inference could be drawn that Paul may
26   have known of the indictment, the evidence is insufficient at this juncture to support a factual
     finding that he was aware of it.
27

28

1  position to direct Brazilian authorities as to how they should devote their resources or carry out

2  their obligations under the INTERPOL Red Notice procedures.

3          Finally, as noted, the government did not rely solely on the Red Notice and the hope that

4  Brazilian authorities would eventually locate and arrest Paul. While Paul implies there was no

5  point in the government's 2018 attempt to locate him in North Carolina given its supposed

6  knowledge he was in Brazil, those efforts reflect that the government was not merely treating this

7  case as a "file and forget" matter. Rather, the government put in additional effort to do what it

8  could within its own territorial jurisdiction, given the possibility that Paul might return to the U.S.

9  at some point in time.

10          Accordingly, the record shows the government exercised reasonable diligence in

11  attempting to bring Paul to trial after his indictment. The delay, while lengthy, was therefore

12  justified, and Paul's speedy trial claim will not succeed "in the absence of a showing of actual

13  prejudice resulting from the delay." *Alexander,* 817 F.3d at 1182.

14

15          *Defendant's assertion of speedy trial right*

16          The government contends Paul's conduct from the time of his arrest in Brazil to the filing

17  of this motion "clearly reveals that he is not genuinely interested in a speedy trial, but rather has

18  sought to avoid trial at every opportunity, and only complains about the resulting delay as a last

19  resort." Specifically, the government argues the fact that Paul resisted extradition for more than a

20  year "should weigh heavily against him." Paul agrees the third *Barker* factor weighs against a

21  defendant who knows he has been indicted and resists efforts to be returned to the U.S. As Paul

22  points out, however, even the government acknowledges countervailing Ninth Circuit authority

23  that this factor does not weigh against defendants who did not know of their indictment and

24  thereafter exercised their right to challenge extradition. *See, e.g., Alexander*, 817 F.3d at 1183

25  (holding that this factor is neutral when the defendant did not know he had been indicted until he

26  was arrested, and thereafter challenged extradition for 16 months). Accordingly, this factor at best

27  does not favor either side. As such, while it does not provide an additional basis to deny the

28

United States District Court
Northern District of California

8

1    motion, neither does it undermine the conclusion that the government has shown it acted with

2    diligence.

3

4        *Prejudice*

5        The courts have traditionally recognized three forms of actual prejudice that may arise

6    from excessive delay between indictment and trial: oppressive pretrial incarceration, anxiety and

7    concern of the accused, and the possibility that the defense will be impaired by dimming

8    memories and loss of exculpatory evidence. *See Doggett*, 505 U.S. at 654. Of these, "the most

9    serious is the last, because the inability of a defendant adequately to prepare his case skews the

10   fairness of the entire system." *Barker*, 407 U.S. at 532.

11       Here, Paul makes a perfunctory effort to claim prejudice in the first category, but his brief

12   incarcerations in Brazil and upon arrival in the U.S. were neither a consequence of the delay nor

13   otherwise unduly prejudicial. Similarly, Paul's assertions of anxiety and mental distress are not

14   tethered to the delay in effecting the arrest, but merely reflect the consequences that he has now

15   been arrested and is facing trial.

16       In the "most serious" final category, Paul has not provided any non-speculative proof as to

17   how his defense was prejudiced by the delay. *See Alexander*, 817 F.3d at 1183; *United States v.*

18   *Corona–Verbera*, 509 F.3d 1105, 1116 (9th Cir. 2007); *United States v. Williams*, 782 F.2d 1462,

19   1466 (9th Cir. 1985). Because Paul is not entitled to a presumption of prejudice, his claim fails.

20

21                              IV. CONCLUSION

22       The motion to dismiss the indictment is denied.

23

24

25

26

27

28

**IT IS SO ORDERED**.


Dated: September 12, 2024

_____

RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California