PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:     (408) 535-5040
Facsimile:      (408) 535-5081
Email: michael.pitman@usdoj.gov

J. PARKER GOCHENOUR (VABN 90069)
Trial Attorney
United States Department of Justice, Tax Division

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 3:14-cr-00164-RS |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date:      January 21, 2025 |
| ROBERT XAN PAUL, | Time:      9:30 AM |
| Defendant. | Place:      Courtroom 3, San Francisco |

The United States of America ("United States") hereby respectfully submits the following

Sentencing Memorandum regarding Defendant Robert Xan Paul ("Defendant") pursuant to Crim. L.R.

32-5(b):

I.      **SUMMARY OF UNITED STATES' SENTENCING RECOMMENDATIONS**

On March 25, 2014, Defendant was charged by indictment with a single count of conspiracy to

file a false tax claim in violation of 18 U.S.C. § 286 (Count One).  Defendant was a fugitive between

2014 and December 2023, at which time he was extradited from Brazil to the United States and made

his initial appearance in the Northern District of California.  On November 12, 2024, Defendant pleaded

guilty to Count One by way of a Plea Agreement entered into pursuant to Rule 11(c)(1)(A) and

(c)(1)(B).  *See* Dkt. No. 65.  In the Plea Agreement, the parties agreed that the adjusted offense level is 15, that the Court will impose restitution of at least $595,110 to the Internal Revenue Service ("IRS"), and that the United States will recommend a term of imprisonment of no more than 12 months.

The Presentence Investigation Report ("PSR") concurs with the calculation of the United States Sentencings Guidelines Total Offense Level set forth in the Plea Agreement.  The United States is in agreement with the PSR's calculations and recommendations, and the United States respectfully recommends that that Defendant be sentenced to: A term of imprisonment of 12 months; a three-year term of supervised release (with conditions to be determined by the Court); an order to pay restitution in the amount of $595,110 to the IRS; and an order to pay a special assessment of $100.

## II.    SUMMARY OF THE CASE

The facts of the case are set forth in great detail in the Plea Agreement and PSR.  In sum, in 2010, Defendant stole nearly $600,000 from the United States by filing a federal income tax return requesting a fraudulent tax refund based on false claims of large income tax withholdings with the assistance of several co-conspirators.  The scheme was successful, and the IRS issued a refund check in the amount of $595,110 to Defendant in May of 2010.  Defendant deposited the fraudulent refund check on May 21, 2010.  Over the following two weeks, Defendant distributed some of the proceeds of his crime to his friends and family, and paid more than $100,000 to his co-conspirators.  On June 2, 2010, Defendant wired $400,000 to a Brazilian bank account owned by a member of his family.  Three days later, on June 5, 2010, Defendant fled the United States and followed his ill-gotten gains to Brazil. Other than a brief trip back to the United States in December of 2010, Defendant resided in Brazil until he was extradited in 2023.

## III.    SENTENCING CALCULATION

Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  *United States v. Booker*, 543 U.S. 220, 267 (2005); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) (stating that the failure to calculate, or improperly calculating, the guidelines range constitutes a procedural error at sentencing).

### A.    Base Offense Level

The Guidelines provide that conspiracies to file false tax claims in violation of 18 U.S.C. § 286

1   should be sentenced under USSG § 2B1.1, which covers fraud crimes.  Section 2B1.1 includes a cross-

2   reference provision instructing the use of different guidelines when appropriate.  *See* USSG §

3   2B1.1(c)(3).  The application note for this provision makes clear that, when a defendant is convicted

4   under a general fraud statute but the conduct underlying the count of conviction is covered by a more

5   specific guideline, the sentencing court should apply the more specific guideline.  *See* USSG § 2B1.1

6   comment. (n.17).  In this case, it is appropriate to use Section 2T1.1, which covers tax crimes, as the

7   more specific guideline.  *See United States v. Aragbaye*, 234 F.3d 1101, 1105-06 (9th Cir. 2000)

8   (applying tax guidelines in case involving tax conspiracy charged under 18 U.S.C. § 371) (citing *United*

9   *States v. Hopper*, 177 F.3d 824 (9th Cir. 1999)).

10          To determine the base offense level under Section 2T1.1, the Guidelines require the calculation

11   of the tax loss attributable to the defendant, and then the application of the tax loss table contained in

12   Section 2T4.1 to set the base offense level.  The tax loss is "the total amount of loss that was the object

13   of the offense (i.e., the loss that would have resulted had the offense been successfully completed)."

14   USSG § 2T1.1(c)(1).  The tax loss attributable to a defendant convicted of criminal tax conspiracies

15   includes "'all reasonably foreseeable acts and omissions . . . in furtherance of the jointly undertaken

16   criminal activity.'"  *United States v. Ladum*, 141 F.3d 1328, 1346 (9th Cir. 1998) (quoting USSG §

17   1B1.3(a)(1)(B)).  "This requires a determination of 'the scope of the criminal activity the particular

18   defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by

19   the defendant's agreement).'"  *Id*. (quoting USSG § 1B1.3, comment. (n.2)).  Accordingly, Defendant's

20   tax loss calculation should include all reasonably foreseeable losses caused by the conspiracy.

21          In addition, Defendant's sentence should account for all relevant conduct under USSG §

22   1B1.3(a), including both charged and uncharged conduct, and even acquitted conduct, if proven by a

23   preponderance of the evidence.  *See generally United States v. Watts*, 519 U.S. 148, 156-57 (1997) (per

24   curiam); *see also United States v. Mercado*, 474 F.3d 654, 656-57 (9th Cir. 2007).  In tax cases, the

25   Guidelines specifically provide for the inclusion of the tax loss resulting from all known tax fraud, in all

26   years, as relevant conduct.  *See* USSG § 2T1.1, comment. (n.2).  "[A]ll conduct violating the tax laws

27   should be considered as part of the same course of conduct or common scheme or plan unless the

28   evidence demonstrates that the conduct is clearly unrelated."  *Id*.  The Guidelines provide the following,

non-exhaustive examples of conduct that is part of the same course of conduct or common scheme or plan: "(A) there is a continuing pattern of violations of the tax laws by the defendant; (B) the defendant uses a consistent method to evade or camouflage income . . . ; and (E) the violation in each instance involves a failure to report or an understatement of a specific source of income, e.g., . . . income from a particular business activity." *Id*.

Here, the parties have agreed that Defendant's participation in a conspiracy to file a materially false Form 1040 in Defendant's name for tax year 2009 resulted in a total tax loss of at least $595,110. Accordingly, the total tax loss for Count One is $595,110. A tax loss of more than $550,000 but less than $1,500,000 corresponds to a base offense level of 20 under USSG § 2T1.4(H).

**B.    Zero Criminal History**

Recent amendments to the Guidelines provide for a two-offense-level reduction for offenders who satisfy the criteria set forth in USSG §§ 4C1.1(a)(1) through (a)(10), including presenting zero criminal history points. The Plea Agreement, the PSR, and the United States all agree that Defendant is eligible for a reduction under this provision because all the criteria set forth at Sections 4C1.1(a)(1) through (a)(10) are satisfied. Accordingly, the Court should grant a two-offense-level credit in this case.

**C.    Acceptance of Responsibility**

Defendant should receive a three-offense-level credit for acceptance of responsibility under USSG § 3E1.1. Credit for acceptance of responsibility applies only to a defendant who "clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1. In evaluating whether the credit should apply, it is appropriate to consider whether the defendant has truthfully admitted the conduct comprising the "offense(s) of conviction," and also truthfully admitted, or not falsely denied, any relevant conduct. *Id*. comment. (n.1(A)). Here, the full three-offense-level credit is appropriate because Defendant has truthfully admitted the relevant conduct sufficiently in advance of trial.

**D.    Resulting Guidelines Adjusted Offense Level**

The Plea Agreement, the PSR, and the United States all agree that Defendant's adjusted offense level is 15. Based on a total offense level of 15, and because Defendant is in Criminal History Category I, the Guidelines range is 18 to 24 months' imprisonment.

**IV.    SECTION 3553(a) FACTORS**

Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553 the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a)(2), and, in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the guidelines; (5) any pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

In this case, these factors support the sentence recommended by the United States. The nature and circumstances of the offenses are serious, and the history and characteristics of Defendant support the sentence recommended by the United States. The need for a sentence that reflects the seriousness of the offense and affords an adequate deterrence to criminal conduct is also particularly applicable here. General deterrence occupies an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

USSG. ch 2, pt. T, introductory comment.; *see also United States v. Ture*, 450 F.3d 352, 359 (8th Cir. 2006) (vacating sentence where the District Court "failed to consider the importance of a term of imprisonment to deter others from stealing from the national purse."); *United States v. Burgos*, 276 F.3d 1284, 1289, n.6 (11th Cir. 2001) ("For a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence."). The United States has committed significant resources to this prosecution; and the IRS' work and effort on this case required countless hours. The fact that they are

1    so resource-intensive is one of the reasons tax prosecutions are relatively rare.  A meaningful sentence is

2    necessary to deter other individuals who may be tempted to steal large amounts of money from the

3    United States using false tax returns, and also to specifically deter Defendant and others similarly

4    situated.

5    **V.    RESTITUTION**

6          The Plea Agreement, the PSR, and the United States all agree that Defendant should be ordered

7    to pay restitution of $595,110 to the IRS.

8           For Count One, restitution is appropriate under the Mandatory Victim Restitution Act of 1996

9    (MVRA) (18 U.S.C. § 3663A), which generally requires restitution for all Title 18 criminal cases,

10   including cases involving charges under Section 286.  Generally, the amount of restitution is limited to

11   losses caused by the specific conduct underlying the offense of conviction (not including relevant

12   conduct), plus prejudgment interest.  *See United States v. Gordon*, 393 F.3d 1044, 1058-1060 (9th Cir.

13   2004) (prejudgment interest is necessary to make the victim whole).  However, when the count of

14   conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, as

15   in a conspiracy to defraud in violation of Section 286, the restitution order may include losses caused by

16   acts of related conduct for which the defendant was not convicted. 18 U.S.C. § 3663(a)(2); *Meredith*,

17   685 F.3d at 827.  Here, Defendant should be ordered to pay restitution to the IRS to compensate for the

18   actual loss caused by the conspiracy – $595,110.

19         To assist the clerk of court in processing restitution payments, the United States requests the

20   Court include the IRS's centralized location for collection of restitution payments in the judgment:

21         IRS - RACS
      Mail Stop 6261, Restitution

22         333 W. Pershing Ave.
      Kansas City, MO 64108

23

24         If the Court orders Defendant to pay restitution to the IRS, the IRS will use the restitution order

25   as the basis for a civil assessment.  *See* 26 U.S.C. § 6201(a)(4).  Defendant does not have the right to

26   challenge the amount of any restitution-based assessment.  *See* 26 U.S.C. § 6201(a)(4)(C).  Neither the

27   existence of a restitution payment schedule, nor Defendant's timely payment of restitution according to

28   that schedule, will preclude the IRS from immediately collecting the full amount of any restitution-based

1   assessment, including by levy and distraint under 26 U.S.C. § 6331. Interest on any restitution-based

2   assessment will accrue under 26 U.S.C. §§ 6601 and 6621 from the last date prescribed for payment of

3   the liability that is the subject of the restitution order to the date the IRS receives payment.

4   **VI.    CONCLUSION**

5       Defendant should be sentenced to a term of imprisonment of 12 months; a three-year term of

6   supervised release (with conditions to be determined by the Court). The Court should also order

7   Defendant to pay restitution to the IRS in the amount of $595,110, and a special assessment of $100.

8

9   DATED: January 14, 2025                    Respectfully submitted,

10                                              PATRICK D. ROBBINS
                                                Attorney for the United States
11

12                                              _____ /s/ _____
13                                              MICHAEL G. PITMAN
                                                Assistant United States Attorney
14
                                                J. PARKER GOCHENOUR
15                                              Trial Attorney

16                                              Attorneys for United States of America

17

18

19

20

21

22

23

24

25

26

27

28